UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X       For Online Publication Only
UNITED STATES OF AMERICA,

                                                                                                                                      **ORDER**

        -against-                                                                                      08-CR-322 (JMA)

PHILIP MURPH,

                Defendant.

----------------------------------------------------------------------X

**APPEARANCES:**

Richard P. Donoghue
United States Attorney
Charles N. Rose, *Of Counsel*
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722
      *Attorneys for the United States*

Philip Murph, *Pro Se*
45308-053
FCC Petersburg
P.O. Box 90026
Petersburg, Virginia 23804
      *Defendant*

**AZRACK, United States District Judge:**

      Pending before the Court is the motion for compassionate release of defendant Philip Murph ("Defendant"). (ECF No. 357.) For the reasons set forth below, the Court denies Defendant's motion.

## I. BACKGROUND

### A. Trial and Sentence

      On February 10, 2009, a jury convicted Defendant of two felony drug trafficking counts for his involvement in a cocaine trafficking conspiracy. (ECF No. 193.) The late Judge Leonard D. Wexler sentenced Defendant to a term of imprisonment of 240 months—a sentence that was

FILED
CLERK
6/16/2020 2:44 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

below the Guidelines range of 360 months to life imprisonment. (ECF No. 249.) Thereafter, Defendant appealed both his conviction and sentence. See United States v. Murph, 452 F. App'x 31 (2d Cir. 2011). The Second Circuit affirmed Defendant's conviction, but ordered remand for the limited purpose of seeking clarification on a sentencing enhancement. Id. On remand, Judge Wexler resentenced Defendant to 240 months of incarceration, which the Second Circuit then affirmed. (ECF Nos. 300, 304.)

In the years that followed, Defendant filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, which was denied. See Murph v. United States, 12 F. Supp. 3d 557 (E.D.N.Y. 2014). He also moved this Court to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) and to amend his Presentence Investigation Report, which were both denied. (ECF No. 354.)

On February 27, 2020, Defendant, proceeding pro se, requested compassionate release from the warden of his facility, FCC Petersburg, on the basis that he assisted a corrections officer who was being assaulted at the MDC in June 2009. (ECF No. 362-1 at 2.) The Bureau of Prisons ("BOP") denied his request on March 20, 2020, finding that it did not "meet the criteria to be considered for a Compassionate Release/Reduction in Sentence." (Id. at 1.) Defendant is currently scheduled for release from the custody of the BOP on July 3, 2027.

**B. The Instant Motion**

Following the onset of the COVID-19 pandemic, Defendant claims that he submitted a pro se request to the warden of his facility "requesting that the Director of the Bureau of Prisons bring a motion for Compassionate Release on his behalf." (ECF No. 357 at 12.) Defendant avers that the warden never responded to his request. (ECF No. 359 at 2.) In his filings, Defendant asserts two different dates on which he submitted the request, March 17, 2020 and April 17, 2020. (ECF

Nos. 357 at 12; 359 at 2.)  The government has been unable to obtain a copy of the request and cannot discern which date is accurate.  (ECF No. 362 at 3 n.7.)

On May 12, 2020, the Court docketed the instant motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (ECF No. 357.)  Proceeding pro se, Defendant argues that because of "severe asthma" he has experienced since birth, along with a "long history" of respiratory problems, such as bronchitis, chest infections, and a susceptibility to chest colds and the flu, he is "in the high risk category if he contracts COVID-19 virus, that would likely lead to his death."  (Id. at 1, 11.)  The government opposes his motion.  (ECF No. 362 at 3.)

## II. LEGAL STANDARD

### A. Standard of Review

Unless an exception applies, a "court may not modify a term of imprisonment once it has been imposed."  United States v. Pinto-Thomaz, No. 18-CR-579, 2020 WL 1845875, at *2 (S.D.N.Y. Apr. 13, 2020) (quoting 18 U.S.C. § 3582(c)).  The First Step Act, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A)(i).

The statute provides courts with discretion to grant compassionate release when there are (1) "extraordinary and compelling reasons" that warrant a sentence reduction, (2) the sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the sentence reduction "is supported by the factors set forth in 18 U.S.C. § 3553(a)."  United

States v. Canales, No. 16-CR-0212, 2020 WL 2319294, at *2 (S.D.N.Y. May 9, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

Congress delegated responsibility to the Sentencing Commission to identify "the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence." United States v. Simmons, No. 15-CR-445, 2020 WL 1847863, at *1 (S.D.N.Y. Apr. 13, 2020). Even after passage of the First Step Act, the Sentencing Commission's "descriptions of 'extraordinary and compelling reasons' remain current," and these standards "remain helpful as guidance to courts which hear these motions without the BOP as an intermediary." United States v. Lisi, No. 15-CR-457, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020), reconsideration denied, 2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020) (citations omitted). The Sentencing Commission's policy statement provides a series of "extraordinary and compelling" reasons for a reduction in sentence. These include: the age of a defendant, if over sixty-five; a defendant's family circumstances; and when a defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." United States v. Meli, No. 17-CR-127, 2020 WL 2114769, at *2 (S.D.N.Y. May 4, 2020) (quoting U.S.S.G. § 1B1.13(1)(A)). The application note to the policy statement also contains a "residual category of 'other reasons' . . . defined only as 'extraordinary and compelling reason[s] other than, or in combination with, the reasons described in [the earlier] subdivisions." Pinto-Thomaz, 2020 WL 1845875, at *2 (alteration in original).

Even if extraordinary and compelling reasons exist, the defendant must not be "a danger to the safety of any other person or to the community," and the reduction must be consistent with the Sentencing Commission's policy statement. U.S.S.G. § 1B1.13(2)–(3). In addition, a "court

confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. Davies, No. 17-CR-57, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020).

### III. DISCUSSION

#### A. Exhaustion

Though Defendant advances two different dates on which he submitted his request to the warden, thirty days have passed since both. Assuming Defendant's statements regarding his submission and lack of response are true, the government has represented that "it does not object to the Court's exercise of jurisdiction to adjudicate the present motion on the merits." (ECF No. 362 at 5 n.14.) Accordingly, the Court finds that Defendant exhausted his administrative remedies.

#### B. Extraordinary and Compelling Reasons for Release

Defendant bears "the burden of showing that 'extraordinary and compelling reasons' to reduce his sentence exist." United States v. Gotti, No. 02-CR-743-07, 2020 WL 497987, at *5 (S.D.N.Y. Jan. 15, 2020). In the absence of a terminal illness, the Sentencing Commission "would permit compassionate release because of a defendant's medical condition if he is 'suffering from a serious physical or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover.'" United States v. Gioeli, No. 08-CR-240, 2020 WL 2472191, at *4 (E.D.N.Y. May 21, 2020) (quoting U.S.S.G. § 1B1.13 Application Note 1(A)).

Though the Court is sympathetic to Defendant's asthma and history of respiratory ailments, Defendant has failed to show that they constitute a terminal illness or that he is unable to administer

5

self-care. His medical records show that he has received regular medical treatment while incarcerated and has been prescribed inhalers to control his asthma. He has not adduced any evidence that he cannot continue to manage his conditions while in prison.

This analysis does not change because of the COVID-19 pandemic. To date, Defendant has not, and may not ever, contract COVID-19. Even if he does, most of those infected do not become seriously ill. See United States v. Santiago, No. 92-CR-563, 2020 WL 2475068, at *3 (E.D.N.Y. May 13, 2020). Further, FCC Petersburg has not had any inmate test positive for COVID-19.[1] Though "the absence of reported cases may be explained by a lack of routine testing and asymptomatic transmission, it may also indicate that the BOP's current protocols have been sufficient to prevent an outbreak." United States v. Daugerdas, No. 09-CR-581, 2020 WL 2097653, at *3 (S.D.N.Y. May 1, 2020). While the Court is "ever mindful of the fact that conditions of confinement—sharing small cells, eating together, using same bathrooms and sinks, delays in medical evaluation and treatment, and rationed access to soap—make prisons more potentially conducive to the transmission of COVID-19 than elsewhere," it also recognizes that "the BOP has taken a number of steps to mitigate the spread of the virus in federal prisons, such as increased screening of inmates, restrictions on visitors, restrictions on gatherings, and mandated social distancing." United States v. Haney, No. 19-CR-541, 2020 WL 1821988, at *6 (S.D.N.Y. Apr. 13, 2020). As the Third Circuit has observed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d

---

[1] Federal Bureau of Prisons, COVID-19 Cases, www.bop.gov/coronavirus (providing daily calculations of confirmed infections) (last accessed June 16, 2020, at 1:30 p.m.).

Cir. 2020). Accordingly, the Court cannot find that the mere possibility of Defendant's exposure to COVID-19 along with his history of asthma and respiratory issues are extraordinary and compelling reasons that warrant compassionate release.

### C. Consideration of Section 3553(a) Factors

Finally, the application of the relevant Section 3553(a) sentencing factors does not support compassionate release.[2] Following release from prison for a prior narcotics offense, Defendant took on a leadership role in a large-scale cocaine distribution conspiracy that was the basis of his conviction at issue here. Judge Wexler's 240-month sentence reflected the seriousness of Defendant's crime and his criminal history. It was also an attempt to promote respect for the law, protect the public, and serve as a deterrent. A reduction of Defendant's sentence by seven years "would be diminishing his transgressions and undermining the goals of the original sentence, among them, the need to dispense adequate punishment for defendant's multiple acts throughout his criminal career and deter others from emulating his behavior." Gioeli, 2020 WL 2572191, at *5. Accordingly, the Section 3553(a) factors weigh against granting Defendant's motion.

---

[2] These factors are:
    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2) the need for the sentence imposed—
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
    (3) the kinds of sentences available;
    (4) [the kinds of sentences and sentencing range provided for in the USSG]
    (5) any pertinent [Sentencing Commission policy statement]
    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
    (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## IV. **CONCLUSION**

For the reasons set forth above, Defendant's motion is DENIED. This application is denied without prejudice to its renewal should Defendant's condition or the situation at his facility materially worsen.

**SO ORDERED.**

Dated: June 16, 2020
      Central Islip, New York

                                              /s/ (JMA)
                                         JOAN M. AZRACK
                                         UNITED STATES DISTRICT JUDGE